## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| PENINSULA TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 2:25-cv-387 |
| v. | § | |
| | § | |
| | § | **JURY TRIAL DEMANDED** |
| DISH WIRELESS L.L.C. D/B/A BOOST | § | |
| MOBILE, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Peninsula Technologies, LLC ("Peninsula") files this Complaint against Defendant DISH Wireless L.L.C. d/b/a Boost Mobile ("DISH" or "Defendant") for infringement of U.S. Patent No. 11,438,810 (the "'810 Patent"), U.S. Patent No. 11,570,844 (the "'844 Patent"), U.S. Patent No. 11,723,109 (the "'109 Patent"), and U.S. Patent No. 12,144,057 (the "'057 Patent"), collectively, the "Asserted Patents."

## THE PARTIES

1.      Peninsula Technologies, LLC is a Texas limited liability company, with a principal place of business at 812 West McDermott Dr. #1037, Allen, TX 75013.

2.      On information and belief, DISH Wireless L.L.C. d/b/a Boost Mobile is a limited liability company organized and existing under the laws of Colorado, with its principal place of business at 5701 South Santa Fe Drive, Littleton, Colorado 80120. DISH is doing business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States, and has a regular and established place of business in this judicial district. DISH is

1

registered to do business in Texas and may be served through its registered agent, Corporation Service Company dba CSC – Lawyers Inc., 211 East 7th Street, Suite 620, Austin, TX 78701.

3.      On information and belief, DISH, either itself and/or through the activities of its subsidiaries, makes, uses, sells, offers for sale, and/or imports throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or uses methods covered by the Asserted Patents in the United States, and/or induces others to make, use, sell, offer for sale, and/or import throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or use methods covered by the Asserted Patents in the United States, and/or contributes to their infringement of the Asserted Patents, as further described below.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, *inter alia*, (i) Defendant has engaged in continuous, systematic, and substantial business in Texas; (ii) Defendant is registered to do business in Texas; (iii) Defendant maintains regular and established places of business in this District; (iv) Defendant has committed and continues to commit, acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, and selling of cellular services that leverage and infringe the inventions of the Asserted Patents (as more particularly identified and described throughout this Complaint, below) in this State and this District.

6.      Defendant maintains a "regular and established" place of business in this district, including by (a) maintaining or controlling retail stores in this district and (b) maintaining and operating infringing base stations in this district, including on cellular towers and other installation sites owned or leased by Defendant. Defendant's significant physical presence in this District includes, but not limited to, ownership of or control over property, inventory, or infrastructure. For example, Defendant maintains retail stores located at 1809 W Loop 281 Ste 105, Longview, TX 75604; 513 E Front St, Tyler, TX 75702, and 1120 E Parker Rd # 112, Plano, TX 75074 (among others), all of which lie within this federal judicial district.

7.      In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods and services provided to Texas residents. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this District. For example, Defendant receives revenue from its corporate stores in this District and through its website (boostmobile.com), by selling network access and services, and by receiving payment from customers in this District for network access and services. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this District.

8.      Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with

this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

9.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because, among other things, (i) Defendant is subject to personal jurisdiction in this District; (ii) Defendant has committed acts of patent infringement in this District; and (iii) Defendant has regular and established places of business in this District. On information and belief, Defendant maintains "regular and established" places of business in this district, including the numerous retail stores in this District through which it transacts business.

## **BACKGROUND**

10.     On information and belief, DISH acquired Boost Mobile in 2020 as part of the T-Mobile and Sprint merger. *See https://about.dish.com/2020-07-01-DISH-enters-retail-wireless-market-with-close-of-Boost-Mobile-advances-build-of-the-nations-first-standalone-5G-network.*

11.     On information and belief, Boost Mobile initially operated as a Mobile Virtual Network Operator (MVNO) while it transitions to become a fully independent Mobile Network Operator (MNO). DISH began building its own 5G network infrastructure and beginning in 2022 deployed its own native network. *See https://about.dish.com/2022-06-15-DISHs-Smart-5G-TM-Wireless-Network-is-Now-Available-to-Over-20-Percent-of-the-U-S-Population*. DISH actively began shifting customers to its own native 5G networks. In 2024 alone, DISH migrated over half a million subscribers onto its own network. As of now, all new Boost Mobile customers having a compatible phone in covered areas are loaded directly on their network. *See https://www.theverge.com/2024/11/11/24291655/boost-mobile-5g-dish-wireless.*

12.     On information and belief, DISH is the fourth largest wireless carrier in the United States and now operates as an MNO serving more than 7 million subscribers and having over

20,000 active cell sites (i.e., base stations). *See https://www.theverge.com/2024/11/11/24291655/boost-mobile-5g-dish-wireless*; *see also https://www.telecoms.com/5g-6g/dish-makes-good-on-5g-coverage-commitment.*

13. On information and belief, DISH's 5G mobile network is 3GPP compliant. *See https://about.dish.com/2023-06-15-The-DISH-5G-Network-is-Now-Available-to-Over-70-Percent-of-the-U-S-Population.*

## THE ASSERTED PATENTS

14. Peninsula is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Peninsula also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

15. The '810 Patent is entitled, "Communication of configuration parameters of radio resources of an unlicensed cell." The '810 Patent lawfully issued on September 6, 2022, and stems from U.S. Patent Application No. 17/111,586 filed on December 4, 2020.

16. The '844 Patent is entitled, "Release message in small data transmission procedure." The '844 Patent lawfully issued on January 31, 2023, and stems from U.S. Patent Application No. 17/709,691, which was filed on March 31, 2022.

17. The '109 Patent is entitled, "Downlink data of small data transmission procedure." The '109 Patent lawfully issued on August 8, 2023, and stems from U.S. Patent Application No. 17/973,830, which was filed on October 26, 2022.

18. The '057 Patent is entitled, "Release message in small data transmission procedure." The '057 Patent lawfully issued on November 12, 2024, and stems from U.S. Patent Application No. 18/103,393, which was filed on January 30, 2023.

19.     Peninsula and its predecessors complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Peninsula may recover pre-suit damages for the Asserted Patents.

20.     The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

## NOTICE

21.     By letter delivered April 4, 2025, as well as through other correspondence and communications with DISH and DISH-related entities prior to the filing of this Complaint, Peninsula via its licensing agent notified DISH of the existence of the Asserted Patents, provided claim charts for each of the Asserted Patents identifying exemplary infringed claims and exemplary infringing DISH products and services, and invited DISH to hold a licensing discussion with Peninsula.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 11,438,810)

22.     Plaintiff incorporates the preceding paragraphs herein by reference.

23.     Peninsula is the assignee of the '810 Patent, with ownership of all substantial rights, title, and interest in and to the '810 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

24.     The '810 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on September 6, 2022, after full and fair examination.

25.     Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1[1] of the '810 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, the making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the '810 Patent, and Defendant performing methods covered by the inventions of the '810 Patent. For example, on information and belief, the accused 3GPP 5G cellular network offering Boost Mobile-branded services includes cellular base stations that employ the handover techniques covered by the '810 Patent (collectively, the "'810 Accused Instrumentalities").

26.     On information and belief, by way of illustration only, Defendant, via the '810 Accused Instrumentalities, has performed and is performing each and every step of the method of claim 1 of the '810 Patent. Defendant, via the '810 Accused Instrumentalities, performs "a method comprising: receiving, by a first base station from a second base station, cell configuration parameters of one or more cells of the second base station." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, Defendant, via the '810 Accused Instrumentalities, receives at a serving base station from a target base station a *Xn Setup Response* message which contains a *Served Cell Information NR* information element (IE) of the target base station:[2]

---

[1] Throughout this Complaint, wherever Peninsula identifies specific claims of the Asserted Patents infringed by Defendant, Peninsula expressly reserves the right to identify additional claims and products in its infringement contentions in accordance with applicable local rules and the Court's case management order. Specifically identified claims throughout this Complaint are provided for notice pleading only.
[2] *See, e.g.,* 3GPP TS 38.423 V18.4.0 (2024-12), pgs. 93, 182 (showing the *XN SETUP RESPONSE* message between NG-RAN nodes includes the *Served Cell Information NR* information element (IE)).

**Figure 8.4.1.2: Xn Setup, successful operation**

### 9.1.3.2     XN SETUP RESPONSE

This message is sent by a NG-RAN node to a neighbouring NG-RAN node to transfer application data for an Xn-C interface instance.

Direction: NG-RAN node$_2$ → NG-RAN node$_1$.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.2.3.1 | | YES | reject |
| Global NG-RAN Node ID | M | | 9.2.2.3 | | YES | reject |
| TAI Support List | M | | 9.2.3.20 | List of supported TAs and associated characteristics. | YES | reject |
| **List of Served Cells NR** | | 0 .. <maxnoof CellsinNG -RAN node> | | Contains a list of cells served by the gNB. If a partial list of cells is signalled, it contains at least one cell per carrier configured at the gNB | YES | reject |
| >Served Cell Information NR | M | | 9.2.2.11 | | – | |

27.    On information and belief, in receiving the cell configuration parameters by Defendant, via the '810 Accused Instrumentalities, "the cell configuration parameters indicat[e]: at least one first information element (IE) indicating a first identifier of a first cell of the one or more cells; [and] at least one second IE indicating that the first cell is an unlicensed cell." For example, Defendant, via the '810 Accused Instrumentalities, receives at the serving base station from the target base station the *Served Cell Information NR* IE which has *NR-PCI* (physical cell

8

identifier) and *NR CGI* (cell global identifier) IEs identifying the cells, and an *NR-U Channel Info List* IE indicating the cell is unlicensed:[3]

### 9.2.2.11    Served Cell Information NR

This IE contains cell configuration information of an NR cell that a neighbouring NG-RAN node may need for the Xn AP interface.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| NR-PCI | M | | INTEGER (0..1007, …) | NR Physical Cell ID | – | |
| NR CGI | M | | 9.2.2.7 | | – | |
| **NR-U Channel Info List** | | *0..1* | | | YES | ignore |
| **>NR-U Channel Info Item** | | *1..<maxno ofNR-UChannelI Ds>* | | | – | |

28.    On information and belief, in receiving the cell configuration parameters by Defendant, via the '810 Accused Instrumentalities, "the cell configuration parameters indicat[e]: at least one third IE indicating one or more configuration parameters of radio resources of the unlicensed cell." For example, Defendant, via the '810 Accused Instrumentalities, receives at the serving base station from the target base station the *Served Cell Information NR* IE which includes configuration parameters such as a *NR-U Channel ID* IE, which uniquely identifies the part of the NR-U Channel Bandwidth on which the channel access procedure is performed, and a *NR ARFCN* IE (absolute radio-frequency channel number) representing the center frequency of the NR-U Channel Bandwidth:[4]

### 9.2.2.11    Served Cell Information NR

This IE contains cell configuration information of an NR cell that a neighbouring NG-RAN node may need for the Xn AP interface.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|

---

[3] *See, e.g.,* 3GPP TS 38.423 V18.4.0 (2024-12), pgs. 20, 256-260 (showing the *Served Cell Information NR* IE has *NR-PCI* (physical cell identifier) and *NR CGI* (cell global identifier) IEs identifying the cells, and an *NR-U Channel Info List* IE); *see also* 3GPP TS 23.401 V16.12.0 (2021-12), pg. 19 (showing NR-U means New Radio Unlicensed).
[4] *See, e.g.,* 3GPP TS 38.423 V18.4.0 (2024-12), pgs. 256-260.

| | | | | | | |
|---|---|---|---|---|---|---|
| NR-U Channel Info List | | 0..1 | | | YES | ignore |
| >NR-U Channel Info Item | | 1..<maxno ofNR-UChannelI Ds> | | | – | |
| >>NR-U Channel ID | M | | INTEGER (1.. maxnoofNR-UChannelIDs, …) | Index to uniquely identify the part of the NR-U Channel Bandwidth consisting of a contiguous set of resource blocks (RBs) on which a channel access procedure is performed in shared spectrum.<br><br>Value 1 represents the first part of the NR-U Channel Bandwidth on which a channel | – | |
| | | | | access procedure is performed. Value 2 represents the second part of the NR-U Channel Bandwidth on which a channel access procedure is performed, and so on. | | |
| >>NR ARFCN | M | | INTEGER (0.. maxNRARFCN) | It represents the centre frequency of the NR-U Channel Bandwidth for NR bands restricted to operation with shared spectrum channel access, as defined in TS 37.213 [51]. Allowed values are specified in 38.101-1 [52] in Table 5.4.2.3-2, Table 5.4.2.3-3 and Table 5.4.2.3-4. | – | |
| >>Bandwidth | M | | ENUMERATED (10MHz, 20MHz, 40MHz, 60MHz, 80MHz, …,100MHz) | | – | |

29.    On information and belief, Defendant, via the '810 Accused Instrumentalities, performs "sending, to the second base station, a handover request message for a wireless device

based on the cell configuration parameters." For example, Defendant, via the '810 Accused Instrumentalities, sends from the serving base station to the target base station a *Handover Request* message for the UE based on the *Target Cell Global ID* containing the cell configuration parameters and whether the mobility restrictions related to the UE indicate that it is allowed to use NR-Unlicensed bands as a primary or secondary RAT:[5]



**Figure 8.2.1.2-1: Handover Preparation, successful operation**

## 9.1.1.1    HANDOVER REQUEST

This message is sent by the source NG-RAN node to the target NG-RAN node to request the preparation of resources for a handover.

Direction: source NG-RAN node → target NG-RAN node.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.2.3.1 | | YES | reject |
| Source NG-RAN node UE XnAP ID reference | M | | NG-RAN node UE XnAP ID 9.2.3.16 | Allocated at the source NG-RAN node | YES | reject |
| Cause | M | | 9.2.3.2 | | YES | reject |
| Target Cell Global ID | M | | 9.2.3.25 | Includes either an E-UTRA CGI or an NR CGI | YES | reject |
| >Mobility Restriction List | O | | 9.2.3.53 | | – | |

---

[5] *See, e.g., Id.*, pgs. 25, 123-124, 325, 334-335 (showing a *Handover Request* message contains a *Mobility Restriction List* IE which contains a *RAT Restrictions* IE as specified in TS 23.501); *see also* 3GPP TS 23.501 V18.5.0 (2024-03), pgs. 105-107 (showing a UE's mobility restrictions indicate whether the UE is allowed to use NR-Unlicensed bands as a primary or secondary RAT).

Mobility Restrictions consists of RAT restriction, Forbidden Area, Service Area Restrictions, Core Network type restriction and Closed Access Group information as follows:

- RAT restriction:

  Defines the 3GPP and non-3GPP Radio Access Technology(ies), a UE is not allowed to access in a PLMN. In a restricted RAT a UE based on subscription is not permitted access to the network for this PLMN. For 3GPP access and CM-CONNECTED state, when radio access network determines target RAT and target PLMN during Handover or redirection procedure, it should take per PLMN RAT restriction into consideration. The RAT restriction is enforced in the network, and not provided to the UE.

---

The UDM shall provide to the AMF the information defined in TS 23.008 [119] about the subscriber's NR or E-UTRA access restriction set by the operator determined e.g. by subscription scenario and roaming scenario:

- For NR:

  - NR not allowed as primary RAT, however any of the NR categories listed below may still be allowed.

  - NR not allowed as secondary RAT.

  - NR in unlicensed bands not allowed as primary RAT.

  - NR in unlicensed bands not allowed as secondary RAT.

30.     On information and belief, Defendant has induced and induces infringement of the '810 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners and operators to use, sell, and/or offer to sell in the United States the '810 Accused Instrumentalities and/or use methods covered by the '810 Patent in the United States by, among other things, contractually obligating others to use, operate, and/or maintain base stations included in the '810 Accused Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, e.g.*, DISH-AT&T Network Services Agreement[6] (showing DISH inducing, directing, causing, and/or encouraging others to operate 3GPP-complaint base stations via agreement).

31.     On information and belief, Defendant has committed the foregoing infringing activities without a license.

---

[6] At https://www.sec.gov/Archives/edgar/data/1001082/000155837021014419/dish-20210930xex10d1.htm.

32.     Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

33.     On information and belief, Defendant knew the '810 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '810 Patent.

## COUNT II

(INFRINGEMENT OF U.S. PATENT NO. 11,570,844)

34.     Plaintiff incorporates the preceding paragraphs herein by reference.

35.     Peninsula is the assignee of the '844 Patent, with ownership of all substantial rights, title, and interest in and to the '844 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

36.     The '844 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on January 31, 2023, after full and fair examination.

37.     Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1 of the '844 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, Defendant performing methods covered by the inventions of the '844 Patent, and the making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the '844 Patent. For example, on information and belief, the accused 3GPP cellular network offering Boost Mobile-branded services includes cellular base stations that

employ the Small Data Transmission (SDT) techniques covered by the '844 Patent (collectively, the "'844 Accused Instrumentalities").

38.    On information and belief, by way of illustration only, Defendant, via the '844 Accused Instrumentalities, has performed and is performing each and every step of the method of claim 1 of the '844 Patent. Defendant, via the '844 Accused Instrumentalities, performs "a method comprising: receiving, by a first base station from a second base station, a request message indicating a small data transmission (SDT) procedure of a wireless device." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, Defendant, via the '844 Accused Instrumentalities, receives at a last serving gNB from a receiving gNB a *Retrieve UE Context Request* message which includes an SDT indicator:[7]

---

[7] *See, e.g.,* 3GPP TS 38.300 V18.1.0 (2024-03), pg. 230-235 ("the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not.").



**Figure 18.3-1. RA-based SDT without UE context relocation**

2.  The Receiving gNB identifies the Last Serving gNB using the I-RNTI and retrieves the UE context by means of Xn-AP Retrieve UE Context procedure. The Receiving gNB indicates that the UE request is for an SDT and may also provide SDT assistance information (e.g., single packet, multiple packets).

39.     On information and belief, Defendant, via the '844 Accused Instrumentalities, performs "sending, to the second base station, an indication that the first base station keeps a context of the wireless device." For example, Defendant, via the '844 Accused Instrumentalities, sends from the last serving gNB to the receiving gNB a *Partial UE Context Transfer* message if the last serving gNB decides not to relocate the full UE context for SDT:[8]

---

[8] *See, e.g., Id.* ("If the last serving gNB decides not to relocate the full UE context, it transfers a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT via the Partial UE Context Transfer procedure").



**Figure 18.3-1. RA-based SDT without UE context relocation**

3. The last serving gNB decides not to relocate the full UE context for SDT.

4. The last serving gNB transfers a partial UE context including the SDT related RLC context.

40.     On information and belief, Defendant, via the '844 Accused Instrumentalities, performs "receiving, from the wireless device via the second base station, uplink data associated with the SDT procedure." For example, Defendant, via the '844 Accused Instrumentalities, receives at the last serving gBN from the UE via the receiving gNB UL (uplink) SDT data:[9]

---

[9] *See, e.g., Id.* ("in case SDT is used for user data over DRBs, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB. The PDCP PDU of UL/DL data is transferred over the tunnels... UL SDT data and/or signalling, if any, are forwarded to the last serving gNB").



The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.

Figure 18.3-1. RA-based SDT without UE context relocation

5.  The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address. The UE context is kept at the last serving gNB and the SDT related RLC context is established at the receiving gNB. Then UL/DL GTP-U tunnels are established for DRBs configured for SDT, if any, and the UL SDT data and/or signalling, if any, are forwarded to the last serving gNB, and then delivered to the core network.

41.     On information and belief, Defendant, via the '844 Accused Instrumentalities, performs "sending, to the second base station and based on completion of the SDT procedure, a radio resource control (RRC) release message for the wireless device." For example, Defendant, via the '844 Accused Instrumentalities, sends from the last serving gNB to the receiving gNB a

*Retrieve UE Context Failure* message based on the SDP procedure ending which includes an encapsulated *RRCRelease* message to be sent to the UE:[10]



**Figure 18.3-1. RA-based SDT without UE context relocation**

6.  The receiving gNB detects the end of SDT session and sends the RETRIEVE UE CONTEXT CONFIRM message including whether this is a "normal" end of SDT transaction or a radio link problem, or large SDT volume from BSR.

7.  Upon receiving the RETRIEVE UE CONTEXT CONFIRM message and deciding to terminate the SDT, the last serving gNB responds to the receiving gNB with the RETRIEVE UE CONTEXT FAILURE message including an encapsulated *RRCRelease* message. The receiving gNB shall release the established partial UE context.

42.    On information and belief, Defendant has induced and induces infringement of the

'844 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing,

---

[10] *See, e.g., Id.* ("The PDCP PDU of UL/DL data is transferred over the tunnels, until the last serving gNB terminates the SDT session and directs the UE to continue in RCC_INACTIVE by sending the *RRCRelease* message.").

causing, and encouraging others, including, but not limited to, its partners and operators to use, sell, and/or offer to sell in the United States the '810 Accused Instrumentalities and/or use methods covered by the '810 Patent in the United States by, among other things, contractually obligating others to use, operate, and/or maintain base stations included in the '810 Accused Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, e.g.,* DISH-AT&T Network Services Agreement[11] (showing DISH inducing, directing, causing, and/or encouraging others to operate 3GPP-complaint base stations via agreement).

43.    On information and belief, Defendant has committed the foregoing infringing activities without a license.

44.    Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

45.    On information and belief, Defendant knew the '844 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '844 Patent.

## <u>COUNT III</u>

### (INFRINGEMENT OF U.S. PATENT NO. 11,723,109)

46.    Plaintiff incorporates the preceding paragraphs herein by reference.

47.    Peninsula is the assignee of the '109 Patent, with ownership of all substantial rights, title, and interest in and to the '109 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

---

[11] At https://www.sec.gov/Archives/edgar/data/1001082/000155837021014419/dish-20210930xex10d1.htm.

48.    The '109 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on August 8, 2023, after full and fair examination.

49.    Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1 of the '109 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, the making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the '109 Patent, and Defendant performing methods covered by the inventions of the '109 Patent. For example, on information and belief, the accused 3GPP 5G cellular network offering Boost Mobile-branded services includes cellular base stations that employ the Small Data Transmission (SDT) techniques covered by the '109 Patent (collectively, the "'109 Accused Instrumentalities").

50.    On information and belief, by way of illustration only, Defendant, via the '109 Accused Instrumentalities, has performed and is performing each and every step of the method of claim 1 of the '109 Patent. Defendant, via the '109 Accused Instrumentalities, performs "a method comprising: sending, by a second base station to a wireless device, an indication of a data radio bearer (DRB) configured for a small data transmission (SDT) procedure of the wireless device." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, Defendant, via the '109 Accused Instrumentalities, sends from a last serving gNB to a user equipment (UE) an *RRCRelease* message which includes an indication of one or more DRBs configured for a SDT procedure of the UE if

the message contains a *sdt-DRB-List* information element (IE) when transitioning a UE from an

RRC_CONNECTED state to an RRC_INACTIVE state:[12]



**Figure 5.3.8.1-1: RRC connection release, successful**

1> if the *RRCRelease* includes *suspendConfig*:

   2> reset MAC and release the default MAC Cell Group configuration, if any;

   2> apply the received *suspendConfig* except the received *nextHopChainingCount*;

   2> if the *sdt-Config* is configured:

      3> for each of the DRB in the *sdt-DRB-List*:

         4> consider the DRB to be configured for SDT;

51.    On information and belief, Defendant, via the '109 Accused Instrumentalities,

performs "receiving, by the second base station from a first base station, a request for a context of

the wireless device." For example, Defendant, via the '109 Accused Instrumentalities, receives at

a last serving gNB from a receiving gNB a *Retrieve UE Context Request* message:[13]

---

[12] *See, e.g.,* 3GPP TS 38.331 V18.1.0 (2024-03), pgs. 176-178, 500-509 ("The network initiates the RRC connection release procedure … to transit a UE in RRC_CONNECTD to RRC_INACTIVE. … if the *RRCRelease* includes *suspendConfig*: … for each of the DRB in the *sdt-DRB-List*: 4> consider the DRB to be configured for SDT").
[13] *See, e.g.,* 3GPP TS 38.300 V18.1.0 (2024-03), pg. 230-235 ("the receiving gNB triggers the XnAP Retrieve UE Context procedure."); *See also* 3GPP TS 38.423 V18.4.0 (2024-12), pg. 36 (showing a *Retrieve UE Context Request* message between NG-RAN nodes)



**Figure 18.3-1. RA-based SDT without UE context relocation**

2. The Receiving gNB identifies the Last Serving gNB using the I-RNTI and retrieves the UE context by means of Xn-AP Retrieve UE Context procedure. The Receiving gNB indicates that the UE request is for an SDT and may also provide SDT assistance information (e.g., single packet, multiple packets).

52.     On information and belief, Defendant, via the '109 Accused Instrumentalities, performs "sending, by the second base station to the first base station, in response to the request, a response message indicating: not to relocate the context of the wireless device; and the DRB configured for the SDT procedure." For example, Defendant, via the '109 Accused Instrumentalities, sends from the last serving gNB to the receiving gNB a *Partial UE Context Transfer* message in response to the *Retrieve UE Context Request* message indicating not to

relocate the full UE context for SDT and sends the SDT RLC context information which includes

a *SDT DRBs To Be Setup List* IE:[14]



**Figure 18.3-1. RA-based SDT without UE context relocation**

3.  The last serving gNB decides not to relocate the full UE context for SDT.

4.  The last serving gNB transfers a partial UE context including the SDT related RLC context.

This IE contains the UE context information within the PARTIAL UE CONTEXT TRANSFER message for NR SDT.

---

[14] *See, e.g.,* 3GPP TS 38.300 V18.1.0 (2024-03), pg. 230-235 ("If the last serving gNB decides not to relocate the full UE context, it transfers a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT via the Partial UE Context Transfer procedure"); *see also* 3GPP TS 38.423 V18.4.0 (2024-12), pg. 51, 140-141, 375-376 (showing the *Partial UE Context Transfer* message contains *Partial UE Context Information for SDT* IE which contains a *SDT DRBs to be Setup List* IE).

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| **SDT DRBs To Be Setup List** | | *0..1* | | | YES | ignore |
| **>SDT DRBs to Be Setup Item** | | *1 .. <maxnoof DRBs>* | | | – | |
| >>DRB ID | M | | 9.2.3.33 | | – | |
| >>UL TNL Information | M | | UP Transport Layer Information 9.2.3.30 | | – | |

53.     On information and belief, Defendant, via the '109 Accused Instrumentalities, performs "receiving, by the second base station from the first base station, downlink data forwarding information associated with the DRB configured for the SDT procedure." For example, Defendant, via the '109 Accused Instrumentalities, receives at the last serving gBN from the receiving gNB a *Partial UE Context Transfer Acknowledge* message containing DL (downlink) TNL addresses associated with the DRB configured for the SDT procedure:[15]

---

[15] *See, e.g., Id.* ("The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address.").



**Figure 18.3-1. RA-based SDT without UE context relocation**

5.  The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address. The UE context is kept at the last serving gNB and the SDT related RLC context is established at the receiving gNB. Then UL/DL GTP-U tunnels are established for DRBs configured for SDT, if any, and the UL SDT data and/or signalling, if any, are forwarded to the last serving gNB, and then delivered to the core network.

54.     On information and belief, Defendant, via the '109 Accused Instrumentalities, performs "based on the downlink data forwarding information, sending, by the second base station to the first base station, downlink data of the SDT procedure received from a core network node." For example, Defendant, via the '109 Accused Instrumentalities, sends from the last serving gNB to the receiving gNB downlink data of the SDT procedure received from a user plane function (UPF) node:[16]

---

[16] *See, e.g., Id.* ("UL/DL GTP-U tunnels are established for DRBs configured for SDT").



**Figure 18.3-1. RA-based SDT without UE context relocation**

5.  The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address. The UE context is kept at the last serving gNB and the SDT related RLC context is established at the receiving gNB. Then UL/DL GTP-U tunnels are established for DRBs configured for SDT, if any, and the UL SDT data and/or signalling, if any, are forwarded to the last serving gNB, and then delivered to the core network.

55.     On information and belief, Defendant has induced and induces infringement of the

'810 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing,

causing, and encouraging others, including, but not limited to, its partners and operators to use,

sell, and/or offer to sell in the United States the '810 Accused Instrumentalities and/or use methods

covered by the '810 Patent in the United States by, among other things, contractually obligating

others to use, operate, and/or maintain base stations included in the '810 Accused

Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, e.g.,*

DISH-AT&T Network Services Agreement[17] (showing DISH inducing, directing, causing, and/or encouraging others to operate 3GPP-complaint base stations via agreement).

56.    On information and belief, Defendant has committed the foregoing infringing activities without a license.

57.    Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

58.    On information and belief, Defendant knew the '109 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '109 Patent.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 12,144,057)

59.    Plaintiff incorporates the preceding paragraphs herein by reference.

60.    Peninsula is the assignee of the '057 Patent, with ownership of all substantial rights, title, and interest in and to the '057 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

61.    The '057 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on November 12, 2024, after full and fair examination.

62.    Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 1 of the '057 Patent in this District and elsewhere in Texas and the United States through the

---

[17] At https://www.sec.gov/Archives/edgar/data/1001082/000155837021014419/dish-20210930xex10d1.htm.

provisioning and operation of its cellular network. Such infringement includes, but is not limited to, Defendant performing methods covered by the inventions of the '057 Patent, and the making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the '057 Patent. For example, on information and belief, the accused 3GPP cellular network offering Boost Mobile-branded services includes cellular base stations that employ the Small Data Transmission (SDT) techniques covered by the '057 Patent (collectively, the "'057 Accused Instrumentalities").

63.    On information and belief, by way of illustration only, Defendant has performed and is performing, via the '057 Accused Instrumentalities, each and every step of the method of claim 1 of the '057 Patent. Defendant, via the '057 Accused Instrumentalities, performs "a method comprising: receiving, by a first base station from a second base station, a request message indicating a small data transmission (SDT) procedure for transmission by a wireless device while the wireless device is in a radio resource control (RRC) inactive state or RRC idle state." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, Defendant, via the '057 Accused Instrumentalities, receives at a last serving gNB from a receiving gNB a *Retrieve UE Context Request* message which includes an SDT indicator while the user equipment (UE) remains in an RRC_INACTIVE state:[18]

---

[18] *See, e.g.,* 3GPP TS 38.300 V18.1.0 (2024-03), pg. 230-235 ("Small Data Transmission (SDT) is a procedure allowing data and/or signalling transmission while remaining in RRC_INACTIVE state (i.e. without transitioning to RRC_CONNECTED state). … the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not.").



**Figure 18.3-1. RA-based SDT without UE context relocation**

> 2. The Receiving gNB identifies the Last Serving gNB using the I-RNTI and retrieves the UE context by means of Xn-AP Retrieve UE Context procedure. The Receiving gNB indicates that the UE request is for an SDT and may also provide SDT assistance information (e.g., single packet, multiple packets).

64. On information and belief, Defendant, via the '057 Accused Instrumentalities, performs "sending, to the second base station, an indication that the first base station keeps a context of the wireless device." For example, Defendant, via the '057 Accused Instrumentalities, sends from the last serving gNB to the receiving gNB a *Partial UE Context Transfer* message if the last serving gNB decides not to relocate the full UE context for SDT:[19]

---

[19] *See, e.g., Id.* ("If the last serving gNB decides not to relocate the full UE context, it transfers a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT via the Partial UE Context Transfer procedure.").



**Figure 18.3-1. RA-based SDT without UE context relocation**

3.  The last serving gNB decides not to relocate the full UE context for SDT.

4.  The last serving gNB transfers a partial UE context including the SDT related RLC context.

65.     On information and belief, Defendant, via the '057 Accused Instrumentalities, performs "receiving, from the second base station, uplink data of the wireless device in the RRC inactive state or RRC idle state." For example, Defendant, via the '057 Accused Instrumentalities, receives at the last serving gBN from the receiving gNB UL (uplink) SDT data of the UE while the UE remains in an RRC_INACTIVE state:[20]

---

[20] *See, e.g., Id.* ("in case SDT is used for user data over DRBs, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB. The PDCP PDU of UL/DL data is transferred over the tunnels… UL SDT data and/or signalling, if any, are forwarded to the last serving gNB").



**Figure 18.3-1. RA-based SDT without UE context relocation**

5.  The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address. The UE context is kept at the last serving gNB and the SDT related RLC context is established at the receiving gNB. Then UL/DL GTP-U tunnels are established for DRBs configured for SDT, if any, and the UL SDT data and/or signalling, if any, are forwarded to the last serving gNB, and then delivered to the core network.

66.     On information and belief, Defendant, via the '057 Accused Instrumentalities, performs "sending, to the second base station and based on completion of the SDT procedure, an RRC release message for the wireless device." For example, Defendant, via the '057 Accused Instrumentalities, sends from the last serving gNB to the receiving gNB a *Retrieve UE Context*

*Failure* message based on the SDP procedure ending which includes an encapsulated *RRCRelease* message to be sent to the UE:[21]



**Figure 18.3-1. RA-based SDT without UE context relocation**

6.  The receiving gNB detects the end of SDT session and sends the RETRIEVE UE CONTEXT CONFIRM message including whether this is a "normal" end of SDT transaction or a radio link problem, or large SDT volume from BSR.

7.  Upon receiving the RETRIEVE UE CONTEXT CONFIRM message and deciding to terminate the SDT, the last serving gNB responds to the receiving gNB with the RETRIEVE UE CONTEXT FAILURE message including an encapsulated *RRCRelease* message. The receiving gNB shall release the established partial UE context.

      67.     On information and belief, Defendant has induced and induces infringement of the '810 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing,

---

[21] *See, e.g., Id.* ("The PDCP PDU of UL/DL data is transferred over the tunnels, until the last serving gNB terminates the SDT session and directs the UE to continue in RCC_INACTIVE by sending the *RRCRelease* message.").

causing, and encouraging others, including, but not limited to, its partners and operators to use, sell, and/or offer to sell in the United States the '810 Accused Instrumentalities and/or use methods covered by the '810 Patent in the United States by, among other things, contractually obligating others to use, operate, and/or maintain base stations included in the '810 Accused Instrumentalities. *See supra.*, ¶ 21 (explaining DISH's notice of infringement); *see also, e.g.*, DISH-AT&T Network Services Agreement[22] (showing DISH inducing, directing, causing, and/or encouraging others to operate 3GPP-complaint base stations via agreement).

68.     On information and belief, Defendant has committed the foregoing infringing activities without a license.

69.     Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

70.     On information and belief, Defendant knew the '057 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '057 Patent.

## CONCLUSION

71.     Peninsula is entitled to recover from Defendant the damages sustained by Peninsula as a result of Defendant's wrongful acts and infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

---

[22] At https://www.sec.gov/Archives/edgar/data/1001082/000155837021014419/dish-20210930xex10d1.htm.

72.    Peninsula has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Peninsula is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## **JURY DEMAND**

73.    Peninsula hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## **PRAYER FOR RELIEF**

74.    Peninsula respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Peninsula the following relief:

(i)    A judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(ii)   A judgment that DISH's infringement of the Asserted Patents has ben willful;

(iii)  A judgment that Defendant account for and pay to Peninsula all damages and costs incurred by Peninsula because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

(iv)   A judgment that Defendant account for and pay to Peninsula a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

(v)    A judgment that Peninsula be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

(vi)    A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii)   Such other and further relief as the Court deems just and equitable.

Dated: April 11, 2025

Respectfully submitted,

*/s/ Patrick J. Conroy*
**Patrick J. Conroy**
Texas Bar No. 24012448
**Ryan P. Griffin**
Texas Bar No. 24053687
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**Brandon G. Moore**
Texas Bar No. 24082372
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
ryan@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

**ATTORNEYS FOR PLAINTIFF PENINSULA INC.**