**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PENINSULA TECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH WIRELESS L.L.C. D/B/A BOOST MOBILE,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. NO. 2:25-cv-00387-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Peninsula Technologies, LLC ("Peninsula") files this First Amended Complaint against Defendant DISH Wireless L.L.C. d/b/a Boost Mobile ("DISH" or "Defendant") for infringement of U.S. Patent No. 11,570,844 (the "'844 Patent"), U.S. Patent No. 11,723,109 (the "'109 Patent"), and U.S. Patent No. 12,144,057 (the "'057 Patent"), collectively, the "Asserted Patents."

**THE PARTIES**

1. Peninsula Technologies, LLC is a Texas limited liability company, with a principal place of business at 812 West McDermott Dr. #1037, Allen, TX 75013.

2. On information and belief, DISH Wireless L.L.C. d/b/a Boost Mobile is a limited liability company organized and existing under the laws of Colorado, with its principal place of business at 5701 South Santa Fe Drive, Littleton, Colorado 80120. DISH is doing business, either directly or through its agents, on an ongoing basis in this judicial district and elsewhere in the United States, and has a regular and established place of business in this judicial district. DISH is

registered to do business in Texas and may be served through its registered agent, Corporation Service Company dba CSC – Lawyers Inc., 211 East 7th Street, Suite 620, Austin, TX 78701.

3. On information and belief, DISH, either itself and/or through the activities of its subsidiaries, makes, uses, sells, offers for sale, and/or imports throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or uses methods covered by the Asserted Patents in the United States, and/or induces others to make, use, sell, offer for sale, and/or import throughout the United States, including within this District, products and services that infringe the Asserted Patents and/or use methods covered by the Asserted Patents in the United States, and/or contributes to their infringement of the Asserted Patents, as further described below.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, *inter alia*, (i) Defendant has engaged in continuous, systematic, and substantial business in Texas; (ii) Defendant is registered to do business in Texas; (iii) Defendant maintains regular and established places of business in this District; (iv) Defendant has committed and continues to commit, acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, and selling of cellular services that leverage and infringe the inventions of the Asserted Patents (as more particularly identified and described throughout this Complaint, below) in this State and this District.

6. Defendant maintains a "regular and established" place of business in this district, including by (a) maintaining or controlling retail stores in this district and (b) maintaining and operating infringing base stations in this district, including on cellular towers and other installation sites owned or leased by Defendant. Defendant's significant physical presence in this District includes, but not limited to, ownership of or control over property, inventory, or infrastructure. For example, Defendant maintains retail stores located at 1809 W Loop 281 Ste 105, Longview, TX 75604; 513 E Front St, Tyler, TX 75702, and 1120 E Parker Rd # 112, Plano, TX 75074 (among others), all of which lie within this federal judicial district.

7. In addition, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods and services provided to Texas residents. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this District. For example, Defendant receives revenue from its corporate stores in this District and through its website (boostmobile.com), by selling network access and services, and by receiving payment from customers in this District for network access and services. Defendant derives benefits from its presence in this federal judicial district, including, but not limited to, sales revenue and serving customers using its mobile network in this District.

8. Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with

this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

9. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1400(b) because, among other things, (i) Defendant is subject to personal jurisdiction in this District; (ii) Defendant has committed acts of patent infringement in this District; and (iii) Defendant has regular and established places of business in this District. On information and belief, Defendant maintains "regular and established" places of business in this district, including the numerous retail stores in this District through which it transacts business.

**BACKGROUND**

10. On information and belief, DISH acquired Boost Mobile in 2020 as part of the T-Mobile and Sprint merger. *See https://about.dish.com/2020-07-01-DISH-enters-retail-wireless-market-with-close-of-Boost-Mobile-advances-build-of-the-nations-first-standalone-5G-network*.

11. On information and belief, Boost Mobile initially operated as a Mobile Virtual Network Operator (MVNO) while it transitions to become a fully independent Mobile Network Operator (MNO). DISH began building its own 5G network infrastructure and beginning in 2022 deployed its own native network. *See https://about.dish.com/2022-06-15-DISHs-Smart-5G-TM-Wireless-Network-is-Now-Available-to-Over-20-Percent-of-the-U-S-Population*. DISH actively began shifting customers to its own native 5G networks. In 2024 alone, DISH migrated over half a million subscribers onto its own network. As of now, all new Boost Mobile customers having a compatible phone in covered areas are loaded directly on their network. *See https://www.theverge.com/2024/11/11/24291655/boost-mobile-5g-dish-wireless.*

12. On information and belief, DISH is the fourth largest wireless carrier in the United States and now operates as an MNO serving more than 7 million subscribers and having over

20,000 active cell sites (i.e., base stations). *See* *https://www.theverge.com/2024/11/11/24291655/boost-mobile-5g-dish-wireless*; *see also* *https://www.telecoms.com/5g-6g/dish-makes-good-on-5g-coverage-commitment*; *see also* *https://about.dish.com/news-releases?item=123502.*

13. On information and belief, DISH's 5G mobile network is 3GPP Release 17 compliant. *See https://www.fcc.gov/ecfs/document/10317151371428/1* ("[DISH] committed to upgrade its deployed 5G Sites to 3GPP Release 17 by June 14, 2025. As of March 1, 2025, [DISH] has met this commitment").

## THE ASSERTED PATENTS

14. Peninsula is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Peninsula also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

15. The '844 Patent is entitled, "Release message in small data transmission procedure." The '844 Patent lawfully issued on January 31, 2023, and stems from U.S. Patent Application No. 17/709,691, which was filed on March 31, 2022.

16. The '109 Patent is entitled, "Downlink data of small data transmission procedure." The '109 Patent lawfully issued on August 8, 2023, and stems from U.S. Patent Application No. 17/973,830, which was filed on October 26, 2022.

17. The '057 Patent is entitled, "Release message in small data transmission procedure." The '057 Patent lawfully issued on November 12, 2024, and stems from U.S. Patent Application No. 18/103,393, which was filed on January 30, 2023.

18. Peninsula and its predecessors complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Peninsula may recover pre-suit damages for the Asserted Patents.

19. The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

**NOTICE**

20. By letter delivered April 4, 2025, as well as through other correspondence and communications with DISH and DISH-related entities prior to the filing of this Complaint, Peninsula via its licensing agent notified DISH of the existence of the Asserted Patents, provided claim charts for each of the Asserted Patents identifying exemplary infringed claims and exemplary infringing DISH products and services, and invited DISH to hold a licensing discussion with Peninsula.

**COUNT I**

(INFRINGEMENT OF U.S. PATENT NO. 11,570,844)

21. Plaintiff incorporates the preceding paragraphs herein by reference.

22. Peninsula is the assignee of the ’844 Patent, with ownership of all substantial rights, title, and interest in and to the ’844 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

23. The ’844 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on January 31, 2023, after full and fair examination.

24. Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 11 of

the ’844 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, Defendant making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the ’844 Patent, and Defendant performing methods covered by the inventions of the ’844 Patent. For example, on information and belief, the accused 3GPP cellular network offering Boost Mobile-branded services includes cellular base stations that employ the Small Data Transmission (SDT) techniques covered by the ’844 Patent (collectively, the “’844 Accused Instrumentalities”).

25. On information and belief, by way of illustration only, Defendant’s ’844 Accused Instrumentalities comprise each and every element of claim 11 of the ’844 Patent. The ’844 Accused Instrumentalities comprise “a first base station comprising one or more processors and memory storing instructions that, when executed by the base station, cause the first base station to perform operations comprising: receiving, from a second base station, a request message indicating a small data transmission (SDT) procedure of a wireless device.” *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, the ’844 Accused Instrumentalities receive at a last serving gNB from a receiving gNB a *Retrieve UE Context Request* message which includes an SDT indicator:[1]

## 18.0 General

Small Data Transmission (SDT) is a procedure allowing data and/or signalling transmission while remaining in RRC_INACTIVE state (i.e. without transitioning to RRC_CONNECTED state). SDT is enabled on a radio bearer basis and is initiated by the UE only if less than a configured amount of UL data awaits transmission across all radio bearers for which SDT is enabled, the DL RSRP is above a configured threshold, and a valid SDT resource is available as specified in clause 5.27 of TS 38.321 [6].

[1] *See, e.g.,* 3GPP TS 38.300 V17.0.0 (2022-03), pg. 179-182 (“the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not.”).

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.




**Figure 18.3-1. RA-based SDT without UE context relocation**

1/2. The steps 1/2 are as defined in steps 1/2 in Figure 18.2-1.

**Figure 18.2-1. RA-based SDT with UE context relocation**

1. The UE sends an *RRCResumeRequest* as well as UL SDT data and/or UL SDT signalling to the receiving gNB.
2. The receiving gNB identifies the last serving gNB using the I-RNTI and retrieves the UE context by means of Xn-AP Retrieve UE Context procedure. The receiving gNB indicates that the UE request is for an SDT transaction and may also provide SDT assistance information (i.e., single packet, multiple packets).

26. On information and belief, the '844 Accused Instrumentalities comprise "sending, to the second base station, an indication that the first base station keeps a context of the wireless device." For example, the '844 Accused Instrumentalities send from the last serving gNB to the receiving gNB a *Partial UE Context Transfer* message if the last serving gNB decides not to relocate the full UE context for SDT:[2]

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

[2] *See, e.g., Id.* ("If the last serving gNB decides not to relocate the full UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT.").

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.




**Figure 18.3-1. RA-based SDT without UE context relocation**

3. The last serving gNB decides not to relocate the UE context for SDT.
4. The last serving gNB transfers a partial UE context including the SDT related RLC context.

27. On information and belief, the '844 Accused Instrumentalities comprise "receiving, from the wireless device via the second base station, uplink data associated with the SDT procedure." For example, the '844 Accused Instrumentalities receive at the last serving gNB from the UE via the receiving gNB SDT UL (uplink) data:[3]

[3] *See, e.g., Id.* ("UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels … in case SDT is used for signalling, SRB PDCP PDUs is transferred between the receiving gNB and the last serving gNB").

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

If the last serving gNB decides not to relocate the UE context, in case SDT is used for signalling, SRB PDCP PDUs is transferred between the receiving gNB and the last serving gNB via the XnAP RRC Transfer procedure.

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.




**Figure 18.3-1. RA-based SDT without UE context relocation**

28. On information and belief, the '844 Accused Instrumentalities comprise "sending, to the second base station and based on completion of the SDT procedure, a radio resource control (RRC) release message for the wireless device." For example, the '844 Accused Instrumentalities send from the last serving gNB to the receiving gNB a *Retrieve UE Context Failure* message based on the SDP procedure ending which includes an encapsulated *RRCRelease* message to be sent to the UE:[4]

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

If the last serving gNB decides not to relocate the UE context, in case SDT is used for signalling, SRB PDCP PDUs is transferred between the receiving gNB and the last serving gNB via the XnAP RRC Transfer procedure.

---

[4] *See, e.g., Id*. ("After SDT transmission is completed, the last serving gNB responds to the receiving gNB with the RETRIEVE UE CONTEXT FAILURE message including an encapsulated *RRCRelease* message.").




**Figure 18.3-1. RA-based SDT without UE context relocation**

6. After SDT transmission is completed, the last serving gNB responds to the receiving gNB with the RETRIEVE UE CONTEXT FAILURE message including an encapsulated *RRCRelease* message. The *RRCRelease* message includes suspend configuration.

NOTE 2: The receiving gNB may send the RETRIEVE UE CONTEXT CONFIRM message to request the termination of SDT session before step 6.

NOTE 3: In case DL non-SDT data or DL non-SDT signalling arrives, the last serving gNB moves the UE back to RRC_INACTIVE by sending *RRCRelease* message.

7. The receiving gNB sends the *RRCRelease* message to the UE.

8. The UE moves to RRC_INACTIVE mode.

29. On information and belief, Defendant has induced and induces infringement of the '844 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners and operators to use, sell, and/or offer to sell in the United States the '810 Accused Instrumentalities and/or use methods

covered by the ’810 Patent in the United States by, among other things, contractually obligating others to use, operate, and/or maintain base stations included in the ’810 Accused Instrumentalities. *See supra.*, ¶ 20 (explaining DISH’s notice of infringement); *see also, e.g.*, DISH-AT&T Network Services Agreement[5] (showing DISH inducing, directing, causing, and/or encouraging others to operate 3GPP-complaint base stations via agreement).

30. On information and belief, Defendant has committed the foregoing infringing activities without a license.

31. Peninsula has been damaged as a result of Defendant’s infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

32. On information and belief, Defendant knew the ’844 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the ’844 Patent.

## COUNT II

(INFRINGEMENT OF U.S. PATENT NO. 11,723,109)

33. Plaintiff incorporates the preceding paragraphs herein by reference.

34. Peninsula is the assignee of the ’109 Patent, with ownership of all substantial rights, title, and interest in and to the ’109 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

35. The ’109 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on August 8, 2023, after full and fair examination.

---

[5] At https://www.sec.gov/Archives/edgar/data/1001082/000155837021014419/dish-20210930xex10d1.htm.

36. Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 11 of the ’109 Patent in this District and elsewhere in Texas and the United States through the provisioning and operation of its cellular network. Such infringement includes, but is not limited to, Defendant making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the ’109 Patent, and Defendant performing methods covered by the inventions of the ’109 Patent. For example, on information and belief, the accused 3GPP 5G cellular network offering Boost Mobile-branded services includes cellular base stations that employ the Small Data Transmission (SDT) techniques covered by the ’109 Patent (collectively, the "’109 Accused Instrumentalities").

37. On information and belief, by way of illustration only, the ’109 Accused Instrumentalities comprise each and every element of claim 11 of the ’109 Patent. The ’109 Accused Instrumentalities comprise "a second base station comprising: one or more processors; and memory storing instructions that, when executed by the one or more processors, cause the second base station to: send, to a wireless device, an indication of a data radio bearer (DRB) configured for a small data transmission (SDT) procedure of the wireless device." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, the ’109 Accused Instrumentalities send from a last serving gNB to a user equipment (UE) an *RRCRelease* message which includes an indication of one or more DRBs configured for a SDT procedure of the UE if the message contains a *sdt-DRB-*

*List* information element (IE) when transitioning a UE from an RRC_CONNECTED state to an RRC_INACTIVE state:[6]

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.




**Figure 18.3-1. RA-based SDT without UE context relocation**

---

[6] *See, e.g.,* 3GPP TS 38.300 V17.0.0 (2022-03), pgs. 181-182 ("The receiving gNB sends the *RRCRelease* message to the UE"); 3GPP TS 38.331 V17.0.0 (2022-03), pgs. 126-128, 363-369 ("The network initiates the RRC connection release procedure … to transit a UE in RRC_CONNECTED to RRC_INACTIVE. … if the *RRCRelease* includes *suspendConfig*: … for each of the DRB in the *sdt-DRB-List*: 4> consider the DRB to be configured for SDT").

1/2. The steps 1/2 are as defined in steps 1/2 in Figure 18.2-1.

3. The last serving gNB decides not to relocate the UE context for SDT.

4. The last serving gNB transfers a partial UE context including the SDT related RLC context.

5. The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address, if needed. After the Partial UE Context Retrieval procedure, the UE context is kept at the last serving gNB and the SDT related RLC context is established at the receiving gNB, then the UL SDT data is delivered to the UPF, the UL NAS PDU is delivered to AMF, if any.

6. After SDT transmission is completed, the last serving gNB responds to the receiving gNB with the RETRIEVE UE CONTEXT FAILURE message including an encapsulated *RRCRelease* message. The *RRCRelease* message includes suspend configuration.

NOTE 2: The receiving gNB may send the RETRIEVE UE CONTEXT CONFIRM message to request the termination of SDT session before step 6.

NOTE 3: In case DL non-SDT data or DL non-SDT signalling arrives, the last serving gNB moves the UE back to RRC_INACTIVE by sending *RRCRelease* message.

7. The receiving gNB sends the *RRCRelease* message to the UE.

## 5.3.8 RRC connection release

### 5.3.8.1 General




**Figure 5.3.8.1-1: RRC connection release, successful**

### 5.3.8.2 Initiation

The network initiates the RRC connection release procedure to transit a UE in RRC_CONNECTED to RRC_IDLE; or to transit a UE in RRC_CONNECTED to RRC_INACTIVE only if SRB2 and at least one DRB or multicast MRB or, for IAB, SRB2, is setup in RRC_CONNECTED; or to transit a UE in RRC_INACTIVE back to RRC_INACTIVE when the UE tries to resume; or to transit a UE in RRC_INACTIVE to RRC_IDLE when the UE tries to resume. The procedure can also be used to release and redirect a UE to another frequency.

1> if the *RRCRelease* includes *suspendConfig*:

2> reset MAC and release the default MAC Cell Group configuration, if any;

2> apply the received *suspendConfig* except the received *nextHopChainingCount*;

2> if the *sdt-Config* is configured:

3> for each of the DRB in the *sdt-DRB-List*:

4> consider the DRB to be configured for SDT;

– *RRCRelease*

The *RRCRelease* message is used to command the release of an RRC connection or the suspension of the RRC connection.

Signalling radio bearer: SRB1

RLC-SAP: AM

Logical channel: DCCH

Direction: Network to UE

***RRCRelease* message**

```
-- ASN1START
-- TAG-RRCRELEASE-START

RRCRelease ::=                      SEQUENCE {
    rrc-TransactionIdentifier           RRC-TransactionIdentifier,
    criticalExtensions                  CHOICE {
        rrcRelease                          RRCRelease-IEs,
        criticalExtensionsFuture            SEQUENCE {}
    }
}

SDT-Config-r17 ::=                  SEQUENCE {
    sdt-DRB-List-r17                    SEQUENCE (SIZE (0..maxDRB)) OF DRB-Identity
    sdt-SRB2-Indication-r17             ENUMERATED {allowed}

    sdt-MAC-PHY-CG-Config-r17           SetupRelease {SDT-CG-Config-r17}
    sdt-DRB-ContinueROHC-r17            ENUMERATED { cell, rna }
}
```

| ***SDT-Config* field descriptions** |
|---|
| ***sdt-DRB-ContinueROHC***<br>Indicates whether the PDCP entity for the radio bearers configured for SDT continues or resets the ROHC header compression protocol during PDCP re-establishment during SDT procedure, as specified in TS 38.323 [5]. Value *cell* indicates that ROHC header compression continues when the UE resumes for SDT in the same cell as the PCell when the RRCRelease message is received. Value *rna* indicates that ROHC header compression continues when the UE resumes for SDT in a cell belonging to the same RNA as the PCell when the RRCRelease message is received. If the field is absent PDCP entity for the radio bearers configured for SDT reset the ROHC header compression protocol during PDCP re-establishment during SDT procedure, as specified in TS 38.323 [5]. |
| ***sdt-DRB-List***<br>Indicates the ID(s) of the DRB(s) that are configured for SDT. If size of the sequence is zero, then the UE assumes that none of the DRBs are configured for SDT. The network only configures MN terminated MCG bearers for SDT. |
| ***sdt-SRB2-Indication***<br>Indiates whether SRB2 is configured for SDT or not. |

38. On information and belief, the ’109 Accused Instrumentalities comprise “receiv[ing], from a first base station, a request for a context of the wireless device.” For example, the ’109 Accused Instrumentalities receive at a last serving gNB from a receiving gNB a *Retrieve UE Context Request* message:[7]

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.

---

[7] *See, e.g.,* 3GPP TS 38.300 V17.0.0 (2022-03), pgs. 181-182 (“the receiving gNB … retrieves the UE context by means of Xn-AP Retrieve UE Context procedure.”); *See also* 3GPP TS 38.423 V17.0.0 (2022-03), pg. 32 (showing a *Retrieve UE Context Request* message between NG-RAN nodes).




**Figure 18.3-1. RA-based SDT without UE context relocation**

## 18.3 SDT without UE context relocation

1/2. The steps 1/2 are as defined in steps 1/2 in Figure 18.2-1.

**Figure 18.2-1. RA-based SDT with UE context relocation**

1. The UE sends an *RRCResumeRequest* as well as UL SDT data and/or UL SDT signalling to the receiving gNB.
2. The receiving gNB identifies the last serving gNB using the I-RNTI and retrieves the UE context by means of Xn-AP Retrieve UE Context procedure. The receiving gNB indicates that the UE request is for an SDT transaction and may also provide SDT assistance information (i.e., single packet, multiple packets).

### 8.2.4.2 Successful Operation




**Figure 8.2.4.2-1: Retrieve UE Context, successful operation**

The new NG-RAN node initiates the procedure by sending the RETRIEVE UE CONTEXT REQUEST message to the old NG-RAN node.

39. On information and belief, the '109 Accused Instrumentalities comprise "send[ing], to the first base station, in response to the request, a response message indicating: not to relocate the context of the wireless device; and the DRB configured for the SDT procedure." For example, the '109 Accused Instrumentalities send from the last serving gNB to the receiving gNB a *Partial UE Context Transfer* message in response to the *Retrieve UE Context Request* message indicating not to relocate the full UE context for SDT and sends the SDT RLC context information which includes a *SDT DRBs To Be Setup List* IE:[8]

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.

[8] *See, e.g.,* 3GPP TS 38.300 V17.0.0 (2022-03), pgs. 180-182 ("If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT"); *see also* 3GPP TS 38.423 V17.0.0 (2022-03), pg. 124, 365 (showing the *Partial UE Context Transfer* message contains *Partial UE Context Information for SDT* IE which contains a *SDT DRBs to be Setup List* IE).




**Figure 18.3-1. RA-based SDT without UE context relocation**

3. The last serving gNB decides not to relocate the UE context for SDT.
4. The last serving gNB transfers a partial UE context including the SDT related RLC context.

### 9.1.1.17 PARTIAL UE CONTEXT TRANSFER

This message is sent by the old NG-RAN node to transfer part of the UE Context to the new NG-RAN node.

Direction: old NG-RAN node → new NG-RAN node.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| Message Type | M | | 9.2.3.1 | | YES | reject |
| New NG-RAN node UE XnAP ID reference | M | | NG-RAN node UE XnAP ID 9.2.3.16 | Allocated at the new NG-RAN node. | YES | reject |
| Old NG-RAN node UE XnAP ID reference | M | | NG-RAN node UE XnAP ID 9.2.3.16 | Allocated at the old NG-RAN node. | YES | ignore |
| Partial UE Context Information for SDT | O | | 9.2.3.164 | | YES | ignore |

### 9.2.3.164 Partial UE Context Information for SDT

This IE contains the UE context information within the PARTIAL UE CONTEXT TRANSFER message for NR SDT.

| IE/Group Name | Presence | Range | IE type and reference | Semantics description | Criticality | Assigned Criticality |
|---|---|---|---|---|---|---|
| **SDT DRBs To Be Setup List** | | *1* | | | YES | ignore |
| **>SDT DRBs to Be Setup Item** | | *1 .. <maxnoofDRBs>* | | | – | |
| >>DRB ID | M | | 9.2.3.33 | | – | |
| >>UL TNL Information | M | | UP Transport Parameters 9.2.3. 76 | | – | |

40. On information and belief, the '109 Accused Instrumentalities comprise "receiv[ing], from the first base station, downlink data forwarding information associated with the DRB configured for the SDT procedure." For example, the '109 Accused Instrumentalities receive at the last serving gNB from the receiving gNB a *Partial UE Context Transfer Acknowledge* message containing DL (downlink) TNL addresses associated with the DRB configured for the SDT procedure:[9]

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

### 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.

[9] *See, e.g.,* 3GPP TS 38.300 V17.0.0 (2022-03), pgs. 180-182 ("The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address").




5. The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address, if needed. After the Partial UE Context Retrieval procedure, the UE context is kept at the last serving gNB and the SDT related RLC context is established at the receiving gNB, then the UL SDT data is delivered to the UPF, the UL NAS PDU is delivered to AMF, if any.

NOTE 1: The DL signalling from the last serving gNB, if any, is forwarded to the receiving gNB via the RRC TRANSFER message, for which the receiving gNB delivers to the UE.

41. On information and belief, the '109 Accused Instrumentalities comprise, "based on the downlink data forwarding information, send[ing], to the first base station, downlink data of the SDT procedure received from a core network node." For example, the '109 Accused Instrumentalities send from the last serving gNB to the receiving gNB downlink data of the SDT procedure received from a user plane function (UPF) node:[10]

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.

[10] *See, e.g.,* 3GPP TS 38.300 V17.0.0 (2022-03), pgs. 181-182 (showing SDT DL data sent from the Last Serving gNB to the UE over UL/DL GTP-U tunnels).




**Figure 18.3-1. RA-based SDT without UE context relocation**

42. On information and belief, Defendant has induced and induces infringement of the '810 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners and operators to use, sell, and/or offer to sell in the United States the '810 Accused Instrumentalities and/or use methods covered by the '810 Patent in the United States by, among other things, contractually obligating others to use, operate, and/or maintain base stations included in the '810 Accused Instrumentalities. *See supra.*, ¶ 20 (explaining DISH's notice of infringement); *see also, e.g.*,

DISH-AT&T Network Services Agreement[11] (showing DISH inducing, directing, causing, and/or encouraging others to operate 3GPP-complaint base stations via agreement).

43. On information and belief, Defendant has committed the foregoing infringing activities without a license.

44. Peninsula has been damaged as a result of Defendant's infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

45. On information and belief, Defendant knew the '109 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '109 Patent.

**COUNT III**

(INFRINGEMENT OF U.S. PATENT NO. 12,144,057)

46. Plaintiff incorporates the preceding paragraphs herein by reference.

47. Peninsula is the assignee of the '057 Patent, with ownership of all substantial rights, title, and interest in and to the '057 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

48. The '057 Patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office on November 12, 2024, after full and fair examination.

49. Defendant has directly infringed and directly infringes one or more claims pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, including at least claim 17 of the '057 Patent in this District and elsewhere in Texas and the United States through the

[11] At https://www.sec.gov/Archives/edgar/data/1001082/000155837021014419/dish-20210930xex10d1.htm.

provisioning and operation of its cellular network. Such infringement includes, but is not limited to, Defendant making, using, offering to sell, and selling of cellular services, products, and/or networks that leverage and infringe the inventions of the ’057 Patent, and Defendant performing methods covered by the inventions of the ’057 Patent. For example, on information and belief, the accused 3GPP cellular network offering Boost Mobile-branded services includes cellular base stations that employ the Small Data Transmission (SDT) techniques covered by the ’057 Patent (collectively, the "’057 Accused Instrumentalities").

50. On information and belief, by way of illustration only, the ’057 Accused Instrumentalities comprise each and every element of claim 17 of the ’057 Patent. The ’057 Accused Instrumentalities comprise "a system, comprising: a second base station comprising: one or more second processors and second memory storing second instructions that, when executed by the one or more second processors, cause the second base station to: receive, from a wireless device in a radio resource control (RRC) inactive state or RRC idle state, uplink data associated with a small data transmission (SDT) procedure." *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, the ’057 Accused Instrumentalities receive at a receiving gNB (second base station) from a user equipment (UE) (wireless device) a *RRCResumeRequest* message with Uplink (UL) data and/or SDT UL signaling while the UE remains in an RRC_INACTIVE state:[12]

[12] *See, e.g.,* 3GPP TS 38.300 V17.0.0 (2022-03), pg. 179-182 ("Small Data Transmission (SDT) is a procedure allowing data and/or signalling transmission while remaining in RRC_INACTIVE state (i.e. without transitioning to RRC_CONNECTED state).").

## 18.0 General

Small Data Transmission (SDT) is a procedure allowing data and/or signalling transmission while remaining in RRC_INACTIVE state (i.e. without transitioning to RRC_CONNECTED state). SDT is enabled on a radio bearer basis and can be initiated either by the UE in case of MO-SDT (Mobile Originated SDT) or by the network in case of MT-SDT (Mobile Terminated SDT). MO-SDT is initiated by the UE only if less than or equal to a configured amount of UL data awaits transmission across all radio bearers for which SDT is enabled, the DL RSRP is above a configured threshold, and a valid SDT resource is available as specified in clause 5.27.1 of TS 38.321 [6].




**Figure 18.3-1. RA-based SDT without UE context relocation**

51. On information and belief, the '057 Accused Instrumentalities comprise the second base station "send[ing], to a first base station, a request message indicating the SDT procedure of the wireless device." For example, the '057 Accused Instrumentalities send from the receiving gNB to the last serving gNB (first base station) a *Retrieve UE Context Request* message that indicates the SDT procedure of the UE:[13]

[13] *See, e.g., Id.*




**Figure 18.3-1. RA-based SDT without UE context relocation**

52. On information and belief, the ’057 Accused Instrumentalities comprise the second base station “receiv[ing], from the first base station, an indication that the first base station keeps a context of the wireless device.” For example, the ’057 Accused Instrumentalities receive at the receiving gNB from the last serving gNB a *Partial UE Context Transfer* message which is an indication that the last serving gNB keeps a context of the UE:[14]

[14] *See, e.g., Id.* (“If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT.”).

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for




**Figure 18.3-1. RA-based SDT without UE context relocation**

53. On information and belief, the ’057 Accused Instrumentalities comprise the second base station “send[ing], to the first base station, the uplink data of the wireless device in the RRC inactive state or RRC idle state.” For example, the ’057 Accused Instrumentalities send from the

receiving gNB to the last serving gNB SDT UL (uplink) data of the UE while the UE remains in an RRC_INACTIVE state:[15]




**Figure 18.3-1. RA-based SDT without UE context relocation**

54. On information and belief, the '057 Accused Instrumentalities comprise the second base station "receiv[ing], from the first base station, an RRC release message for the wireless device." For example, the '057 Accused Instrumentalities receives at the receiving gNB from the last serving gNB a *Retrieve UE Context Failure* message based on the SDP procedure ending which includes an encapsulated *RRCRelease* message to be sent to the UE:[16]

---

[15] *See, e.g.*, *Id.*
[16] *See, e.g.*, *Id.*




55. On information and belief, the ’057 Accused Instrumentalities comprise “the first base station, wherein the first base station comprises: one or more first processors and first memory storing first instructions that, when executed by the one or more first processors, cause the first base station to: receive, from the second base station, the request message indicating the SDT procedure for transmission by the wireless device while the wireless device is in the RRC inactive state or RRC idle state.” *See supra.*, ¶¶ 12-13 (showing DISH operates a 3GPP 5G network which comprises base stations, i.e., New Generation Node Bs (gNBs)). For example, the ’057 Accused Instrumentalities receive at a last serving gNB from a receiving gNB a *Retrieve*

*UE Context Request* message that indicates the SDT procedure of the UE while the UE remains in an RRC_INACTIVE state:[17]

## 18.0 General

Small Data Transmission (SDT) is a procedure allowing data and/or signalling transmission while remaining in RRC_INACTIVE state (i.e. without transitioning to RRC_CONNECTED state). SDT is enabled on a radio bearer basis and can be initiated either by the UE in case of MO-SDT (Mobile Originated SDT) or by the network in case of MT-SDT (Mobile Terminated SDT). MO-SDT is initiated by the UE only if less than or equal to a configured amount of UL data awaits transmission across all radio bearers for which SDT is enabled, the DL RSRP is above a configured threshold, and a valid SDT resource is available as specified in clause 5.27.1 of TS 38.321 [6].

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for

[17] *See, e.g., Id.* ("Small Data Transmission (SDT) is a procedure allowing data and/or signalling transmission while remaining in RRC_INACTIVE state (i.e. without transitioning to RRC_CONNECTED state). … the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not.").

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.




**Figure 18.3-1. RA-based SDT without UE context relocation**

56. On information and belief, the '057 Accused Instrumentalities comprise the first base station "send[ing], to the second base station, the indication that the first base station keeps the context of the wireless device." For example, the '057 Accused Instrumentalities send from the last serving gNB to the receiving gNB a *Partial UE Context Transfer* message which is an indication that the last serving gNB keeps a context of the UE:[18]

[18] *See, e.g.*, *Id.* ("If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT.").

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.




3. The last serving gNB decides not to relocate the UE context for SDT.
4. The last serving gNB transfers a partial UE context including the SDT related RLC context.
5. The receiving gNB acknowledges receiving the partial UE context and provides associated DL TNL address, if needed. After the Partial UE Context Retrieval procedure, the UE context is kept at the last serving gNB and the SDT related RLC context is established at the receiving gNB, then the UL SDT data is delivered to the UPF, the UL NAS PDU is delivered to AMF, if any.

57. On information and belief, the ’057 Accused Instrumentalities comprise the first base station “receiv[ing], via the second base station, the uplink data of the wireless device in the RRC inactive or RRC idle state.” For example, the ’057 Accused Instrumentalities receive at the

last serving gNB from the receiving gNB SDT UL data of the UE while the UE remains in an RRC_INACTIVE state:[19]

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

If the last serving gNB decides not to relocate the UE context, in case SDT is used for signalling, SRB PDCP PDUs is transferred between the receiving gNB and the last serving gNB via the XnAP RRC Transfer procedure.

---

[19] *See, e.g., Id.* ("UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels … in case SDT is used for signalling, SRB PDCP PDUs is transferred between the receiving gNB and the last serving gNB").

## 18.3 SDT without UE context relocation

The overall procedure for SDT procedure over RACH without UE context relocation is illustrated in the figure 18.3-1.




**Figure 18.3-1. RA-based SDT without UE context relocation**

58. On information and belief, the '057 Accused Instrumentalities comprise the first base station "send[ing], to the second base station and based on completion of the SDT procedure, the RRC release message for the wireless device." For example, the '057 Accused Instrumentalities send from the last serving gNB to the receiving gNB a *Retrieve UE Context Failure* message based on the SDP procedure ending which includes an encapsulated *RRCRelease* message to be sent to the UE:[20]

[20] *See, e.g., Id.* ("PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RCC_INACTIVE by sending *RRCRelease* message.").

## 18.1 Support of SDT procedure over RACH

For SDT procedure over RACH, if the UE accesses a gNB other than the last serving gNB, the UL SDT data/signalling is buffered at the receiving gNB, and then the receiving gNB triggers the XnAP Retrieve UE Context procedure. The receiving gNB indicates SDT to the last serving gNB and the last serving gNB decides whether to relocate the UE context or not. Other SDT assistance information (i.e., single packet, multiple packets) may also be provided by the receiving gNB to help the decision.

If the last serving gNB decides not to relocate the UE context, it transfers at least a partial UE context containing SDT RLC context information necessary for the receiving gNB to handle SDT. Then, UL/DL tunnels are established for DRBs configured for SDT between the receiving gNB and the last serving gNB and PDCP PDU of UL/DL data are transferred over the tunnels, until the last serving gNB decides to terminate the SDT session and move the UE back to RRC_INACTIVE by sending *RRCRelease* message. During the SDT session, the receiving gNB may also request to terminate the SDT session to the last serving gNB.

If the last serving gNB decides not to relocate the UE context, in case SDT is used for signalling, SRB PDCP PDUs is transferred between the receiving gNB and the last serving gNB via the XnAP RRC Transfer procedure.




**Figure 18.3-1. RA-based SDT without UE context relocation**

6. After SDT transmission is completed, the last serving gNB responds to the receiving gNB with the RETRIEVE UE CONTEXT FAILURE message including an encapsulated *RRCRelease* message. The *RRCRelease* message includes suspend configuration.

NOTE 2: The receiving gNB may send the RETRIEVE UE CONTEXT CONFIRM message to request the termination of SDT session before step 6.

NOTE 3: In case DL non-SDT data or DL non-SDT signalling arrives, the last serving gNB moves the UE back to RRC_INACTIVE by sending *RRCRelease* message.

7. The receiving gNB sends the *RRCRelease* message to the UE.

8. The UE moves to RRC_INACTIVE mode.

59. On information and belief, Defendant has induced and induces infringement of the ’810 Patent pursuant to 35 U.S.C. § 271(b), by actively and knowingly inducing, directing, causing, and encouraging others, including, but not limited to, its partners and operators to use, sell, and/or offer to sell in the United States the ’810 Accused Instrumentalities and/or use methods covered by the ’810 Patent in the United States by, among other things, contractually obligating others to use, operate, and/or maintain base stations included in the ’810 Accused Instrumentalities. *See supra.*, ¶ 20 (explaining DISH’s notice of infringement); *see also, e.g.*, DISH-AT&T Network Services Agreement[21] (showing DISH inducing, directing, causing, and/or encouraging others to operate 3GPP-complaint base stations via agreement).

60. On information and belief, Defendant has committed the foregoing infringing activities without a license.

61. Peninsula has been damaged as a result of Defendant’s infringement described in this Count. Defendant is, thus, liable to Peninsula in an amount that adequately compensates Peninsula for Defendant’s infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

[21] At https://www.sec.gov/Archives/edgar/data/1001082/000155837021014419/dish-20210930xex10d1.htm.

62. On information and belief, Defendant knew the '057 Patent existed and knew of exemplary infringing DISH products and services while committing the foregoing infringing acts thereby willfully, wantonly and deliberately infringing the '057 Patent.

## CONCLUSION

63. Peninsula is entitled to recover from Defendant the damages sustained by Peninsula as a result of Defendant's wrongful acts and infringements in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

64. Peninsula has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Peninsula is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

65. Peninsula hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

66. Peninsula respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Peninsula the following relief:

(i) A judgment that one or more claims of the Asserted Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

(ii) A judgment that DISH's infringement of the Asserted Patents has been willful;

(iii) A judgment that Defendant account for and pay to Peninsula all damages and costs incurred by Peninsula because of Defendant's infringing activities and other conduct

complained of herein, including an accounting for any sales or damages not presented at trial;

(iv) A judgment that Defendant account for and pay to Peninsula a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

(v) A judgment that Peninsula be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

(vi) A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages; and

(vii) Such other and further relief as the Court deems just and equitable.

Dated: July 16, 2025

Respectfully submitted,

/s/ Patrick J. Conroy

**Patrick J. Conroy**
Texas Bar No. 24012448
**Ryan P. Griffin**
Texas Bar No. 24053687
**Jonathan H. Rastegar**
Texas Bar No. 24064043
**Nathan L. Levenson**
Texas Bar No. 24097992
**Brandon G. Moore**
Texas Bar No. 24082372
**NELSON BUMGARDNER CONROY PC**
2727 N. Harwood St., Suite 250
Dallas, TX 75201
pat@nelbum.com
ryan@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

**ATTORNEYS FOR PLAINTIFF PENINSULA INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2025, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF filing system, which will generate and send an e-mail notification of said filing to all counsel of record.

/s/ Patrick J. Conroy